**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES HAVASSY,** *individually, and on behalf of all others similarly situated,* | **Case No.: 2:21-cv-04608-TJS** |
| *Plaintiff,* | **JURY TRIAL DEMANDED** |
| **v.** | |
| **KELLER WILLIAMS REALTY, INC., PETER HEWITT and KELLY HOUSTON,** | |
| *Defendants.* | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, James Havassy ("Havassy"), on behalf of himself and all others similarly situated, through his undersigned attorneys, submits his Complaint against Defendant Keller Williams Realty, Inc. ("Keller Williams"), Peter Hewitt ("Hewitt") and Kelly Houston ("Houston") (collectively referred to as "Defendants"), and states:

**NATURE OF THE CASE**

1. Havassy brings this action individually and on behalf of all others similarly situated.

2. Havassy seeks damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants for placing solicitation calls to Havassy and the putative class members' cellular telephones using a pre-recorded voice without their prior express consent, in violation of 47 U.S.C. §227(b) of the Telephone Consumer Protection Act ("TCPA") and the TCPA's corresponding regulations.

3. Havassy also seeks damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants for placing calls to phone numbers registered

on the National Do Not Call Registry for the purpose of soliciting real estate services without express consent or a pre-existing business relationship in violation of 47 U.S.C. §227(c) of the TCPA and the TCPA's corresponding regulations.

**PARTIES, JURISDICTION AND VENUE**

4. Havassy is an individual who at all times material to this Complaint resided at all in the Township of Whitehall, in the County of Lehigh and in the Commonwealth of Pennsylvania.

5. Keller Williams is a National Real Estate corporation that employs various agents that hold themselves out as acting on behalf of Keller Williams.

6. Keller Williams is a Texas corporation that maintains its headquarters at 1221 South Mopac Expressway, Suite 400 Austin, Texas 78746.

7. Keller Williams, at all times material to this Complaint has been in good standing and authorized to transaction business in the Commonwealth of Pennsylvania.

8. Hewitt is an individual and a real estate agent for Keller Williams.

9. Hewitt maintains an office located at 2901 Emrick Blvd Northampton Women's Team Room, Bethlehem, Pennsylvania 18020.

10. Houston is an individual and real estate agent for Defendant Keller Williams.

11. Houston maintains an office located at 2901 Emrick Blvd Northampton Women's Team Room, Bethlehem, Pennsylvania 18020.

12. Keller Williams employs numerous agents who regularly list and sell real estate situated in the Commonwealth of Pennsylvania.

13. Defendants Peter Hewitt and Kelly Houston worked primarily in the Commonwealth of Pennsylvania and sold real property in the Commonwealth of Pennsylvania at

all times relevant to this lawsuit.

14. Defendants purposefully availed themselves to the Commonwealth of Pennsylvania by knowingly placing calls to Havassy's cell phones and to the putative class members' cell phones and landline phones.

15. Defendants' calls to Havassy were received in Lehigh County.

16. Accordingly, personal jurisdiction exists and venue is proper.

**Keller Williams's "The Peter Hewitt Team"**

17. At all times material to this Complaint, a group of agents referred to as "The Peter Hewitt Team" held themselves out as agents that sell real estate for Keller Williams's benefit.

18. Keller Williams's website has an option where a user of the website can "Find an Agent."

19. Peter Hewitt's name appears on Keller Williams's website as a Keller Williams agent who serves the states of Pennsylvania and New Jersey.

20. Upon clicking Mr. Hewitt's name on Keller Williams's website, Mr. Hewitt's contact information appears. Below the contact information states, "Market Center – Keller Williams Real Estate."

21. Keller Williams's website also includes an icon a user can click stating, "Connect with Peter Hewitt."

22. Upon clicking the "Connect with Peter Hewitt" icon, the user is required to accept Keller Williams's "Terms of Use" and "Privacy Policy."

23. Likewise, a user can click the name of "Kelly Houston," who is identified by Keller Williams's website as a "luxury agent" and a "Director of Operations" for the Peter Hewitt Team.

24. "The Peter Hewitt Team" website prominently displays the Keller Williams logo on the header of the website.

25. On information and belief, agents that sell real estate for Keller Williams's benefit are required to use an e-mail address associated with Keller Williams.

26. As relevant to this Amended Complaint, Keller Williams's website states that Mr. Hewitt can be emailed at PeterHewittTeam@kw.com and that Ms. Houston can be emailed at kellyhouston@kw.com.

27. The Peter Hewitt Team website does not state that the office is independently owned by an entity other than Keller Williams.

28. One of Peter Hewitt's LinkedIn profiles states that Mr. Hewitt is a "Realtor at Keller Williams Real Estate."

29. Likewise, Ms. Houston's Linked profile states that she is a "Realtor at Keller Williams Real Estate."

30. Mr. Hewitt's honors and awards on his LinkedIn profile state that he was part of the "#1 Team" for various Keller Williams offices on 13 separate occasions.

31. A second LinkedIn profile maintained by Mr. Hewitt states that he is currently a "Real Estate Agent at Keller Williams Real Estate" and that he has held this position since July 2010.

32. Mr. Hewitt's second LinkedIn profile states that his team was the "#1 team in closed sales volume" at "our Keller Williams Office" on four separate occasions.

33. The Facebook, Twitter, Instagram and YouTube accounts associated with "The Peter Hewitt Team" also prominently display the Keller Williams logo.

34. Keller Williams controls and has the right to control all forms of advertising using

its name and logo, as used by its agents. These forms of advertising include telemarketing.

35. A training presentation published by Keller Williams as part of "KW University" encourages its agents to attempt to sell Keller Williams's services through telemarketing. Specifically, Keller Williams's training materials state "Telemarketing . . . [is an] effective method[] of prospecting."

36. Keller Williams also has specific "policies and guidelines" that it has published regarding telemarketing practices. These guidelines give Keller Williams the right to control the telemarketing practices used by Keller Williams's agents as the "policies and guidelines" require the caller to "state your name" and "the name of the office."

37. On information and belief, Defendants have financially benefitted from the telemarketing calls at issue in this Complaint by obtaining commissions from the purchase and sale of real estate.

**FACTS CONCERNING THE PARTIES**

38. At all times material to this Complaint, Havassy owned a cellular telephone, the number for which was (484) XXX-6744

39. At all times material to this Complaint, Havassy used the cell phone ending with digits 6774 primarily for residential purposes.

40. On or about January 1, 2016, Havassy registered his cell phone number ending in 6774 on the National Do Not Call Registry.

41. Havassy registered his number to avoid receiving unwanted telemarketing and solicitation calls.

42. At all times material to this Complaint, Havassy also owned a cell phone, the number for which was (610) XXX-5991.

43. At all times material to this Complaint, Havassy used the cell phone with digits ending in 5991 primarily for residential purposes.

44. On or about January 1, 2016, Havassy registered that cell phone number ending in 5991 on the National Do Not Call Registry.

45. Havassy registered his number to avoid receiving unwanted telemarketing and solicitation calls.

46. In or around June of 2018, Havassy listed his previous home in Hanover Township, Pennsylvania for sale.

47. Havassy never listed his home for sale with Keller Williams, Hewitt or Houston.

48. Havassy had no previous business relationship with Keller Williams, Hewitt or Houston.

49. Havassy never consented or "opted-in" to receive solicitation calls from Keller Williams, Hewitt or Houston.

50. Nonetheless, on information and belief, Keller Williams's data and "lead generation" software service "LandVoice" identified Mr. Havassy's home as a potential target from which Keller Williams and its realtors could obtain a sales commission.[1]

51. Accordingly, from summer 2018 through at least December 2018, Havassy was inundated with a high volume of solicitation calls from Keller Williams's realtors in which the realtors attempted to financially benefit from Havassy's real estate listing.

**Havassy's Magisterial Court Litigation and Settlement With Reginald Reglus**

52. Havassy become irritated with the high volume of unwanted solicitation calls from individual Keller Williams realtors.

[1] Keller Williams encourages its realtors to "follow the model" set out by Gary Keller, which encourages, *inter alia*, making as many solicitation calls as possible.

53. Accordingly, Havassy filed suit against various individual realtors in the fall of 2018 under the TCPA.

54. Those individual realtors sued by Havassy included Reginald Reglus, who was associated with the Peter Hewitt Team.

55. Havassy filed suit against Reglus in his individual capacity on November 9, 2018 in Northampton County Magisterial Court, Docket No. MJ-03104-cv-000240-2018. (*See* Ex. A, Docket for *Havassy v. Reglus*, Magisterial Court Lawsuit ("the Reglus Litigation")).

56. On February 21, 2019, judgment was entered in favor of Reginald Reglus. (Ex. A).

57. Ultimately, Havassy and Reglus resolved the dispute underlying the Reglus Litigation, and Havassy signed a release with Reglus individually on April 15, 2019. (*See* Ex. B, Settlement Agreement and Release from the case *Havassy v. Reglus*, hereinafter the "Reglus Release.")[2]

58. The Reglus Release provides in relevant part:

> James Havassy, individually, and on behalf of his heirs, executors, administrators, successors, assigns, subrogees and anyone claiming by or through them (hereinafter collectively referred to as "Releasors"), for and in consideration of the payment of Six Hundred and Seventy Nine Dollars and Seventy Five Cents ($679.75), (this represents $1.00 of damages and $678.75 representing all attorneys' fees, expenses, and cost due), the sufficiency of which is hereby acknowledged, does hereby release, acquit and forever discharge Reginald Reglus, together with their current and former insurers, heirs, executors, partners, shareholders, officers, directors, employees, predecessors, successors, affiliates, subsidiaries, parent companies, assigns, attorneys, servants, and agents (hereinafter collectively referred to as "Releasees"), of and from any and all liability, claims, demands, actions, causes of action and suits at law or in equity alleged in,

[2] While the release was originally designated confidential, this Court Ordered the release be produced and shared during the Rule 16 Conference on November 9, 2021.

> could have been alleged in, or arising out of the action filed in Northampton County Magisterial District Court 03-1-04, Docket No. CV-240-2018 (referred to as "the occurrence").

(Ex. B). The Reglus Release makes no mention of or reference to Defendants.

**Defendants' Campaign of Pre-Recorded Solicitation Calls to Havassy**

59. Despite the fact that Havassy registered both of his cell phone numbers on the National Do Not Call Registry, and despite the fact that Havassy did not consent to Defendants' solicitation calls, Keller Williams, by and through its agents Hewitt and Houston engaged in a campaign of intrusive and harassing pre-recorded calls to Havassy at his two cell phone numbers.

60. In or around December 2018, Defendants left a total of twenty-four (24) voicemails for Havassy on his cell phones which consisted of two form prerecorded messages.

61. The first prerecorded message stated:

> Hi, this is Peter Hewitt from the Peter Hewitt Team of Keller Williams. I see that your property is expired and I want to give you a presentation on my and my real estate history to have the job of listing your property. I have 30 years of experience and a long history of happy customers. When you list with the Peter Hewitt Team we guarantee you'll be happy with the result. Please call me at (610) 597-4247. That's (610) 597-4247. Thank you and I'm looking forward to listing your property.

62. The first pre-recorded message is referred to in this Complaint as the "the Peter Hewitt message."

63. The second pre-recorded message stated:

> Hi, I'm Kelly Houston with Peter Hewitt Team with Keller Williams. I am calling to list your home and would love the opportunity to work with you. I have years of experience and many happy customers. Please call me at 570-236-7881. Again, that's 570-236-7881. Thank you.

64. The second pre-recorded message is referred to in this Complaint as the "the Kelly Houston message."

65. In December 2018, Keller Williams, through its agents Hewitt and Houston, placed unwanted solicitation calls to Havassy's cell phone numbers in the form of pre-recorded voicemails on the following dates and times:

**Calls to Havassy's Number Ending in 6744**

| Date | Time | Message |
|---|---|---|
| 12/11/2018 | 2:15 pm EST | Peter Hewitt Message |
| 12/11/2018 | 2:22 pm EST | Kelly Houston Message |
| 12/11/2018 | 3:06 pm EST | Peter Hewitt Message |
| 12/11/2018 | 5:07 pm EST | Peter Hewitt Message |
| 12/11/2018 | 8:02 pm EST | Kelly Houston Message |
| 12/11/2018 | 8:33 pm EST | Kelly Houston Message |
| 12/12/2018 | 12:04 pm EST | Peter Hewitt Message |
| 12/12/2018 | 2:05 pm EST | Kelly Houston Message |
| 12/12/2018 | 4:04 pm EST | Peter Hewitt Message |
| 12/18/2018 | 2:57pm EST | Peter Hewitt Message |
| 12/18/2018 | 6:03 pm EST | Peter Hewitt Message |
| 12/18/2018 | 8:32 pm EST | Kelly Houston Message |

**Calls to Havassy's Number Ending in 5991**

| Date | Time | Message |
|---|---|---|
| 12/11/2018 | 2:17 pm EST | Peter Hewitt Message |
| 12/11/2018 | 2:22 pm EST | Kelly Houston Message |
| 12/11/2018 | 3:06 pm EST | Peter Hewitt Message |
| 12/11/2018 | 5:04 pm EST | Peter Hewitt Message |
| 12/11/2018 | 8:02 pm EST | Kelly Houston Message |
| 12/11/2018 | 8:32 pm EST | Kelly Houston Message |
| 12/12/2018 | 12:04 pm EST | Peter Hewitt Message |
| 12/12/2018 | 2:05 pm EST | Kelly Houston Message |
| 12/12/2018 | 4:04 pm EST | Peter Hewitt Message |
| 12/18/2018 | 2:22 pm EST | Peter Hewitt Message |
| 12/18/2018 | 6:03 pm EST | Peter Hewitt Message |
| 12/18/2018 | 8:32 pm EST | Kelly Houston Message |

66. Defendants' calls were made for solicitation purposes, namely, to attempt to get Havassy to sell his home with Defendants.

67. On information and belief, these prerecorded voice calls were sent to hundreds, if not thousands, of putative class members.

68. The acts and omissions described above were in violation of the TCPA.

69. Defendants' violations of the TCPA were knowing and willful.

**Direct and Vicarious Liability**

70. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

71. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

72. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer “should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller’s authorized agent.” *Id.* at 6593.

73. Keller Williams hired, encouraged, permitted, and enjoyed the benefits of mass robocalling by its agents, Hewitt and Houston.

74. Specifically, Keller Williams’s data and lead generation service “LandVoice" was programmed to encourage calling homeowners looking to sell their homes, regardless of whether they consented to receive such calls or registered on the Do Not Call Registry.

75. Keller Williams encourages agents to follow “the model” outlined by Gary Keller, which recommends, *inter alia*, making as many telemarketing phone calls as possible.

76. On information and belief, Defendants sought a financial benefit from the prerecorded voicemails it placed to the putative class members as it attempted to derive business from these calls.

77. Keller Williams, Hewitt and Houston placed the telemarketing calls at issue or had such calls placed on their behalf.

78. Keller Williams derives profit from and exercises control over its realtors (including control of marketing) Hewitt and Houston.

79. Furthermore, the pre-recorded messages left on Havassy’s voicemail, consistent with Keller Williams’s policies and guidelines, identified Keller Williams as the organization on whose behalf Hewitt and Houston acted.

80. Accordingly, Hewitt and Houston had actual and/or apparent authority to act on behalf of Keller Williams.

81. Keller Williams acted as a principal to Hewitt and Houston, both of whom acted as Keller Williams's agents.

82. Keller Williams is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from Hewitt and Houston's unlawful calls (or its own calls).

83. Keller Williams is directly and/or vicariously liable under the TCPA as alleged in this Complaint as Keller Williams encouraged and benefitted from Hewitt and Houston's violative conduct and/or oversaw or had the right to oversee the telemarketing calls at issue and/or placed the calls at issue.

**84.** For the counts identified below, Hewitt and Houston are directly and/or liable for the unlawful calls at issue as they directly placed the underlying calls or had such calls placed on their behalf and/or oversaw or had the right to oversee the telemarketing calls at issue.

**The Claims at Issue Are Not Released By the Reglus Release**

85. The Reglus Release did not release any of the claims at issue in this case.

86. The Reglus Release provides, in relevant part:

> The undersigned, James Havassy, individually, and on behalf of his heirs, executors, administrators, successors, assigns, subrogees and anyone claiming by or through them (hereinafter collectively referred to as "Releasors"), for and in consideration of the payment of Six Hundred and Seventy Nine Dollars and Seventy Five Cents ($679.75), (this represents $1.00 of damages and $678.75 representing all attorneys' fees, expenses, and cost due), the sufficiency of which is hereby acknowledged, does hereby release, acquit and forever discharge Reginald Reglus, together with their current and former insurers, heirs, executors, partners, shareholders, officers, directors, employees, predecessors, successors, affiliates, subsidiaries, parent companies, assigns, attorneys, servants, and agents (hereinafter collectively referred to as "Releasees"), of and from any and all liability, claims, demands, actions, causes of action and suits at law or in equity alleged in, could have been alleged in, or arising out of the action filed in

> Northampton County Magisterial District Court 03-1-04, Docket No. CV-240-2018 (referred to as "the occurrence").

(Ex. B, p. 1, ¶ 1.)

87. None of the Defendants (Keller Williams, Peter Hewitt or Kelly Houston) are insurers, heirs, executors, partners, shareholders, officers, directors, employees, predecessors, successors, affiliates, subsidiaries, parent companies, assigns, attorneys, servants or agents of Reginald Reglus.

88. Furthermore, Pennsylvania Rules of Civil Procedure Governing Actions and Proceedings Before Magisterial District Judges Rule 210 provides:

> Rule 210: Practices Prohibited.
>
> The following practices are specifically prohibited:
>
> (1) The use of depositions or interrogatories for discovery or use at a hearing.
>
> (2) Adding parties after the complaint is filed.
>
> (3) Attachment proceedings previous to judgment.
>
> (4) Entry of a judgment by warrant of attorney or by confession of judgment.

89. Havassy filed the Complaint in the Reglus Litigation on November 9, 2018 before a Pennsylvania Magisterial District Judge.

90. The offending calls from Defendants identified in this class-action suit occurred in December 2018 - after the Reglus complaint was filed.

91. The Defendants could not have been named and offending calls underlying this matter could not have been alleged the Reglus Litigation; as adding parties is not permitted after a complaint is filed in magisterial court.

92. Accordingly, the claims at issue in this Complaint were not the subject of the Reglus litigation, nor were they not released in the Reglus Release.

## CLASS ALLEGATIONS

93. Havassy brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

94. Havassy seeks to represent the following classes:

> **Pre-recorded Voice Call Class:** All persons from four years before the filing of the Complaint to the date of class certification to whom Defendants (or their agents) placed calls to cell phones which contained a pre-recorded voice identifying Peter Hewitt or Kelly Houston of Keller Williams.
>
> **Do-Not-Call List Class:** All persons who from four years before the filing of the Complaint to the date a class is certified: (1) received two or more pre-recorded voice calls soliciting real estate services in which the calls identify Peter Hewitt or Kelly Houston of Keller Williams; (2) said calls were received by a number associated with a residential line or cell phone that was registered on the Do Not Call Registry for over 31 days at the time of the calls; and, (3) said class member did not provide prior express written consent to be contacted by Defendants and did not have an established business relationship with Defendants.

95. Havassy reserves the right to amend or modify the class definitions consistent with the record.

96. The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

97. Havassy's claims are typical of the class members, as all are based on the same or similar facts and legal theories.

98. Havassy will fairly and adequately protect the putative class members' interests. Havassy has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither Havassy nor his counsel have any conflicts of interest with Defendants. Rather, their interests are adverse. Havassy and his counsel are dedicated to

vigorously litigating this matter.

99. The number if putative class members is so numerous and joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

100. Common questions of law and fact exist to all putative class members and such questions of law or fact predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to the following:

a. Whether Defendants, or someone operating on their behalf, placed prerecorded voice calls to the cell phones of Havassy and the putative class members without obtaining the recipients' prior express written consent;

b. Whether Defendants placed prerecorded voice calls to the cell phones of Havassy and the putative class members;

c. Whether Defendants placed calls to Havassy and the putative class members after they were registered on the National Do Not Call Registry more than 31 days;

d. Whether Defendants' conduct violates 47 U.S.C. § 227(b);

e. Whether Defendants' conduct violates 47 U.S.C. § 227(c);

f. Whether Defendants' conduct violates the rules and regulations implementing the TCPA; and,

g. Whether Havassy and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

101. Havassy and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing prerecorded voice calls to Havassy and the putative class members and also placing such calls to persons whose numbers were registered on the National Do Not Call Registry.

102. The class action mechanism is superior to other available means for the fair and

efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgements. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

103. Havassy was at all times relevant to this Complaint a resident of Lehigh County, Pennsylvania. Upon information and belief, Defendants, through Hewitt and Houston solicit real estate throughout the Lehigh Valley, Southeastern Pennsylvania and New Jersey areas. Many class members reside in the areas encompassed by this Court. Accordingly, this Court is an appropriate forum in which to adjudicate this dispute.

104. Based on discovery and further investigation, Havassy may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23.

**COUNT I**
**VIOLATIONS OF §227(b) *et seq.***
**OF THE TELEPHONE CONSUMER PROTECTION ACT**

105. Havassy incorporates the previous paragraphs as if fully stated in this Count.

106. The TCPA prohibits placing calls using an artificial or prerecorded voice to a cellular telephone except where the caller has received the prior express written consent of the

called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); (f)(8).

107. Defendants initiated multiple calls to Havassy which used a pre-recorded voice.

108. Defendants' calls to Havassy and the putative class members were not made for emergency purposes.

109. On information and belief, Defendants did not have prior express written consent to contact Havassy or the putative class members.

110. The violations by Defendants were done willfully and intentionally.

111. As a result of the above violations of the TCPA, Havassy and the putative class members are entitled to all damages available to them under Section 227(b) of the TCPA, including $500 per call and up to $1,500 per call if Defendants' violations of the TCPA are determined to be willful.

**COUNT II**
**VIOLATIONS OF §227(c) *et seq.***
**OF THE TELEPHONE CONSUMER PROTECTION ACT**

112. Havassy incorporates the previous paragraphs as if fully stated in this Count.

113. The TCPA prohibits any person or entity from initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200 *et seq*.

114. Defendants contacted Havassy and the putative class members despite the fact that their telephone numbers were registered on the Do Not Call Registry.

115. Said calls were "telephone solicitations" as they encouraged the purchase of or investments in Defendants' goods and/or services.

116. Defendants called Havassy and the putative class members on two or more

occasions within 12 months after their numbers had been listed on the Do Not Call Registry for greater than 31 days.

117. The violations by Defendants were done willfully and intentionally.

118. As a result of the above violations of the TCPA, Havassy and the putative class members are entitled to all damages available to them under Section 227(c) of the TCPA, including $500 per call and up to $1,500 per call if Defendants' violations of the TCPA are determined to be willful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff James Havassy, individually, and on behalf of the putative class members, requests that the Court grant the following relief against Defendants Keller Williams Realty, Inc., Peter Hewitt and Kelly Houston:

1) Enter an order against Defendants pursuant to Rule 23 of the Rules of Civil Procedure, certifying this action as a class action and appointing James Havassy as the class representative;
2) Enter an order appointing Kimmel & Silverman and Butsch Roberts & Associates LLC as class counsel;
3) Enter judgment in favor of Havassy and the classes for all damages available under the TCPA, including statutory damages of $500 per violation (of both 227(b) and 227(c)), or up to $1,500 per violation of each sub-section if Defendants willfully violated the TCPA;
4) Enter a judgment in favor of Havassy and the class that enjoins Defendants from violating the TCPA's regulations prohibiting Defendants from calling numbers registered on the National Do Not Call Registry;
5) Award Havassy and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration; and,
6) Award Havassy and the class such further and other relief, including but not limited to any applicable pre-judgment and/or post-judgment interest, and any other relief the Court deems just and appropriate.

**<u>JURY DEMAND</u>**

Plaintiff James Havassy hereby demands that this case be tried before a Jury.

Respectfully submitted,

Dated: November 30, 2021

Kimmel & Silverman, P.C.

By: */s/ Jacob U. Ginsburg*
Craig T. Kimmel, Esq. (PA ID No. 57100)
Jacob U. Ginsburg, Esq. (PA ID. No. 311908)
30 East Butler Pike
Ambler, PA 19002
Telephone: 215-540-8888
kimmel@creditlaw.com
jginsburg@creditlaw.com
Email: teamkimmel@creditlaw.com

Butsch Roberts & Associates LLC

*/s/ Christopher E. Roberts*
Christopher E. Roberts (admitted *pro hac vice*)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Phone: 314-863-5700
Fax: 314-863-5711
croberts@butschroberts.com

*Attorneys for Plaintiff, James Havassy, and all others similarly situated*

**CERTIFICATE OF SERVICE**

I certify that on November 30, 2021 a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record and was also served by e-mail to John Shea (jshea@fmglaw.com), Todd Stelter (tstelter@hinshawlaw.com) and John Ryan (jryan@hinshawlaw.com).

/s/ Christopher E. Roberts