## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES HAVASSY**, *individually, and on behalf of all others similarly situated,* | ) ) ) | **Case No.: 2:21-cv-04608-TJS** |
| *Plaintiff,* | ) ) | **CLASS-ACTION** |
| **v.** | ) ) ) | |
| **KELLER WILLIAMS REALTY, INC.,** **PETER HEWITT and KELLY HOUSTON,** | ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendants.* | ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff, James Havassy ("Plaintiff" or "Havassy"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, submits his Complaint against Defendant Keller Williams Realty, Inc. ("KWRI" or "Keller Williams"), Peter Hewitt ("Hewitt") and Kelly Houston ("Houston") (collectively "Defendants").  Plaintiff states:

### NATURE OF THE CASE

1.    Havassy brings this action individually and on behalf of all others similarly situated seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of KWRI, and Keller Williams' Real Estate agents Peter Hewitt and Kelly Houston for placing solicitation calls to Plaintiff and the putative class members' cellular telephones using a pre-recorded voice without their prior express consent, in violation of 47 U.S.C. § 227(b) of the Telephone Consumer Protection Act (TCPA) and the TCPA's corresponding regulations.

2.    Havassy also brings this action individually and on behalf of others similarly situated seeking damages and any other available legal or equitable remedies resulting from the

unlawful actions of Defendants for placing calls to phone numbers registered on the National Do Not Call Registry for the purpose of soliciting real estate services in violation of 47 U.S.C. §227(c) of the TCPA and the TCPA's corresponding regulations.

## PROCEDURAL HISTORY OF CASE

3.    Havassy initiated this Class-Action matter on September 24, 2021 in the Lehigh County Court of Common Pleas, naming KWRI as the sole Defendant. Doc. No. 1-1.

4.    Defendant KWRI removed the case to this Court on October 20, 2021. Doc. No. 1.

5.    Plaintiff filed a First Amended Complaint on November 21, 2021 adding Defendants Hewitt and Houston as co-Defendants. Doc. No. 22.

6.    On January 11, 2022, KWRI filed a motion to dismiss or in the alternative to transfer venue to the Western District of Texas. Doc. No. 25. Plaintiff filed his response on February 7, 2022. Doc. No. 30.

7.    Hewitt and Houston also filed motions to dismiss on February 10, 2022, to which Plaintiff responded on February 28, 2022. Doc. Nos. 32 and 36.

8.    Pursuant to Order of the Court, Havassy and KWRI conducted jurisdictional discovery and submitted supplemental briefing on the issue of personal jurisdiction on August 31, 2022. Doc. Nos. 43, 44 and 45.

9.    After learning KWRI was nearing a nationwide class settlement on TCPA claims pending before that court, this Court transferred Havassy's case to the Western District of Texas on first-to-file doctrine Doc. Nos. 48-50.

10.    The Western District of Texas dismissed Plaintiff's claims against Hewitt and Houston for lack of personal jurisdiction in that Court (a motion Plaintiff did not oppose as

Plaintiff asserted in this action that the Western District of Texas did not have personal jurisdiction over the Pennsylvania-based real estate agents). Doc. No. 72.

11.    Havassy's case was thereafter consolidated with the other TCPA class-actions against KWRI on the docket *Wright v Keller Williams Realty, Inc.,* 1:18-cv-775 (W.D. Tex.). Doc. No. 73.

12.    Shortly thereafter, Havassy's counsel learned that a nationwide class-action settlement had been reached. That did not occur in the Western District of Texas (the court where the TCPA class-actions had been pending and to which KWRI insisted Havassy's case should be transferred), but in Florida state court in Indian River County. Doc. No. 52-2.

13.    In that matter, KWRI stipulated that Indian River County had personal jurisdiction over the Austin, Texas-based KWRI. *Id*.

14.    The classes Havassy seeks to represent were excluded from the nationwide settlement. Specifically, the settlement excludes:

> persons who received a call, or to whom a call was placed, by or on behalf of Peter Hewitt or Kelly Houston and/or which contained a pre-recorded voice identifying Peter Hewitt or Kelly Houston.

Doc. No. 52-2, p. 2, item 4.

15.    In light of those developments, on July 12, 2023, the Western District of Texas concluded the original basis for the transfer (overlapping classes and the first-to-file doctrine) was moot and therefore, transferred the case back to this Court. Doc. No. 51.

16.    Plaintiff now re-adds Hewitt and Houston to this case and files his Second Amended Complaint as this Court has personal jurisdiction over the Pennsylvania-based real estate agents.

SECOND AMENDED CLASS-ACTION COMPLAINT

## PARTIES

17.    Plaintiff James Havassy is a natural person who resided at all times relevant to this lawsuit, in the Township of Whitehall, in the County of Lehigh and in the Commonwealth of Pennsylvania.

18.    Defendant KWRI is a national real estate corporation that employs various agents, including in the State of Pennsylvania, that hold themselves out as acting on behalf of Keller Williams.

19.    KWRI maintains its headquarters at 1221 South Mopac Expy, Suite 400, Austin, Texas

20.    Defendant Peter Hewitt is a natural person and real estate agent for Defendant KWRI.

21.    Mr. Hewitt maintains an office located at 2901 Emrick Blvd Northampton Women's Team Room, Bethlehem, Pennsylvania 18020.

22.    Defendant Kelly Houston is a natural person and real estate agent for Defendant KWRI.

23.    Ms. Houston maintains an office located at 2901 Emrick Blvd Northampton Women's Team Room, Bethlehem Pennsylvania 18020

24.    As relevant to this Complaint, a group of agents referred to as "The Peter Hewitt Team" hold themselves out as agents that sell real estate for Keller Williams' benefit.

25.    Defendants Houston and Hewitt are part of "The Peter Hewitt Team."

26.    Keller Williams's website has an option where a user can "Find an Agent."

27.    Defendant Hewitt's name appears on KWRI's website as a KWRI real estate agent who serves the states of Pennsylvania and New Jersey.

28.    Upon clicking Mr. Hewitt's name on KWRI's website, Mr. Hewitt's contact information appears.  Below the contact information states, "Market Center – Keller Williams Real Estate."

29.    KWRI's website also includes an icon a user can click stating, "Connect with Peter Hewitt."

30.    Upon clicking the "Connect with Peter Hewitt" icon, a user is required to accept KWRI's Terms of Use and Privacy Policy.

31.    Likewise, a user can click the name of "Kelly Houston", who is identified by Keller Williams' website as a "luxury agent" and the "Director of Operations" for the Peter Hewitt Team.

32.    The Peter Hewitt Team's website prominently displays the Keller Williams logo on the header of the website.

33.    On information and belief, agents that sell real estate for Defendant's benefit are required to use an e-mail address associated with Defendant.

34.    Keller Williams's website states that Mr. Hewitt can be emailed at PeterHewittTeam@kw.com and Ms. Houston can be emailed at kellyhouston@kw.com.

35.    At all times relevant to this complaint, The Peter Hewitt Team website did not state that the office is independently owned by an entity other than Defendant.

36.    One of Peter Hewitt's LinkedIn profiles states that Mr. Hewitt is a "Realtor at Keller Williams Real Estate."

37.    Likewise, Ms. Houston's Linked profile states that she is a "Realtor at Keller Williams Real Estate."

38.    Mr. Hewitt's honors and awards state that he was part of the "#1 Team" for

various Keller Williams offices on 13 separate occasions.

39.    A second LinkedIn profile maintained by Mr. Hewitt states that he is currently a "Real Estate Agent at Keller Williams Real Estate" and that he has held this position since July 2010.

40.    Mr. Hewitt's second LinkedIn profile states that his team was the "#1 team in closed sales volume" at "our Keller Williams Office" on four separate occasions.

41.    KWRI controls and has the right to control all forms of advertising using its name and logo, as used by its agents. These forms of advertising include telemarketing.

42.    A training presentation published by KWRI as part of "KW University" encourages its agents to attempt to sell KWRI's services through telemarketing.  Specifically, KWRI's training materials state "Telemarketing . . . [is an] effective method[] of prospecting."

43.    KWRI also has specific "policies and guidelines" that it has published regarding telemarketing practices.  These guidelines give KWRI the right to control the telemarketing practices used by Keller Williams' agents as the "policies and guidelines" require the caller to "state your name" and "the name of the office."

**JURISDICTION AND VENUE**

44.    At all times relevant to this Complaint, Plaintiff resided in the Township of Whitehall, in the County of Lehigh and in the Commonwealth of Pennsylvania.

45.    Defendant Keller Williams is a Texas corporation who at all times material to this Complaint has been in good standing and authorized to transact business in the State of Pennsylvania.

46.    Keller Williams employs numerous agents who regularly list and sell real estate situated in the Commonwealth of Pennsylvania.

47.    KWRI franchises sold over 160,000 properties in the Commonwealth of Pennsylvania during the class period.

48.    KWRI and Hewitt and Houston were engaged in a "profit sharing" operation where Hewitt and Houston shared in profits made by KWRI, in part, from Hewitt and Houston's real estate efforts.

49.    KWRI had the ability to direct and control virtually all aspects of Hewitt and Houston's marketing activities.

50.    KWRI received at least 14 million dollars in royalty income during the class period from Pennsylvania Keller Williams agencies, or "market centers."

51.    Defendants Peter Hewitt and Kelly Houston worked primarily in the Commonwealth of Pennsylvania and sold real property in the Commonwealth of Pennsylvania at all times relevant to this lawsuit.

52.    Defendants purposefully availed themselves to the Commonwealth of Pennsylvania by knowingly placing calls to Plaintiff's cell phones, and to various class members' cell phones and landline phones.

53.    Defendants' calls to Plaintiff were received in Lehigh County.

54.    Defendants' calls to other class members were received in other Pennsylvania counties, including Lehigh, Northampton, Berks and Montgomery Counties.

55.    For those reasons stated above, as well as those articulated in the Plaintiff's opposition to motion to dismiss and supplemental briefing on personal jurisdiction, this Court has both general and specific personal jurisdiction over the Defendants in this matter. *See* Doc. Nos. 30, 43Furthermore, venue is proper under 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## FACTS CONCERNING THE PARTIES

56.     At all times relevant to this Second Amended Complaint, Havassy owned a cellular telephone, the number for which was (484) XXX-6744

57.     At all times relevant to this Complaint, Havassy used the cell phone ending with digits 6774 primarily for residential purposes, namely to communicate with friends and family members.

58.     On or about January 1, 2016, Havassy registered his cell phone number ending in 6774 on the National Do Not Call Registry.

59.     Havassy registered his number to avoid receiving unwanted telemarketing and solicitation calls.

60.     At all times relevant to this Complaint, Havassy also owned a second cell phone, the number for which was (610) XXX-5991.

61.     At all times relevant to this Complaint, Havassy used the cell phone with digits ending in 5991 primarily for residential purposes, namely to communicate with friends and family member.

62.     On or about January 1, 2016, Havassy registered that cell phone number ending in 5991 on the National Do Not Call registry.

63.     Havassy registered his number to avoid receiving unwanted telemarketing and solicitation calls.

64.     In or around June of 2018, Havassy listed his previous home in Hanover Township, Pennsylvania for sale.

65.     Havassy never listed his home for sale with Keller Williams.

66.     Havassy had no previous business relationship with Keller Williams.

67.    Havassy never consented or "opted-in" to receive solicitation calls from realtors.

68.    Nonetheless, Keller Williams' data and "lead generation" software service "LandVoice" identified Mr. Havassy's home as a potential target for Keller Williams' realtors.[1]

69.    Accordingly, from summer 2018 through at least December 2018, Mr. Havassy was inundated with a high volume of solicitation calls from Keller Williams' realtors attempting to capitalize off of Mr. Havassy's real estate listing.

**Havassy's Magisterial Court Litigation and Settlement With Reginald Reglus**

70.    Mr. Havassy become irritated with the high volume of unwanted solicitation calls from Keller Williams realtors.

71.    Accordingly, he filed suit against various individual realtors in the fall of 2018 under the TCPA.

72.    Those individual realtors sued by Havassy included Reginald Reglus, who was associated with the Peter Hewitt Team

73.    Havassy filed suit against Reglus in his individual capacity on November 9, 2018 in Northampton County Magisterial Court, Docket No. MJ-03104-cv-000240-2018.  (*See* Ex. A, Docket for Havassy v Reglus Magisterial Court Lawsuit ("the Reglus Litigation".)

74.    On February 21, 2019, judgment was entered by Magisterial District Judge Vivian I. Zumas in favor of Defendant Reginald Reglus. (Ex. A.)

75.    Ultimately, Havassy and Reglus resolved the dispute underlying the Reglus Litigation, in an agreement and release signed by Havassy on April 15, 2019. (*See* Ex. B,

---

[1] By way of background, Keller Williams encourages its realtors to "follow the model" set out by Gary Keller, which encourages, *inter alia*, making as many solicitation calls as possible.

SECOND AMENDED CLASS-ACTION COMPLAINT

Settlement Agreement and Release from the case <u>Havassy v Reglus</u>, hereinafter the "Reglus Release.")[2]

76.    The Reglus Release provides in relevant part:

James Havassy, individually, and on behalf of his heirs, executors, administrators, successors, assigns, subrogees and anyone claiming by or through them (hereinafter collectively referred to as "Releasors"), for and in consideration of the payment of Six Hundred and Seventy Nine Dollars and Seventy Five Cents ($679.75), (this represents $1.00 of damages and $678.75 representing all attorneys' fees, expenses, and cost due), the sufficiency of which is hereby acknowledged, does hereby release, acquit and forever discharge Reginald Reglus, together with their current and former insurers, heirs, executors, partners, shareholders, officers, directors, employees, predecessors, successors, affiliates, subsidiaries, parent companies, assigns, attorneys, servants, and agents (hereinafter collectively referred to as "Releasees"), of and from any and all liability, claims, demands, actions, causes of action and suits at law or in equity alleged in, could have been alleged in, or arising out of the action filed in Northampton County Magisterial District Court 03-1-04, Docket No. CV-240-2018 (referred to as "the occurrence").

(Ex. B.)

**<u>Defendants' Campaign of Pre-Recorded Solicitation Calls to Havassy</u>**

77.    Despite the fact that Mr. Havassy registered both of his cell phone numbers on the National Do Not Call Registry, and despite the fact that Havassy did not consent to Keller Williams' solicitation calls, Keller Williams, by and through its agents Peter Hewitt and Kelly Houston engaged in a campaign of intrusive and harassing pre-recorded calls to Havassy at his two cell phone numbers.

78.    In or around December 2018, Defendants left a total of twenty-four (24) voicemails for Havassy on his cell phones which consisted of two form prerecorded messages.

---

[2] While the release was originally designated confidential, this Court Ordered the release be produced and shared during the Rule 16 Conference on November 9, 2021.

79. The first prerecorded message stated:

> Hi, this is Peter Hewitt from the Peter Hewitt Team of Keller
> Williams. I see that your property is expired and I want to give
> you a presentation on my and my real estate history to have the job
> of listing your property. I have 30 years of experience and a long
> history of happy customers. When you list with the Peter Hewitt
> Team we guarantee you'll be happy with the result. Please call me
> at (610) 597-4247. That's (610) 597-4247. Thank you and I'm
> looking forward to listing your property.

80. The first pre-recorded message is referred to in this Complaint as the "the Peter

Hewitt message."

81. The second pre-recorded message stated:

> Hi, I'm Kelly Houston with Peter Hewitt Team with Keller
> Williams. I am calling to list your home and would love the
> opportunity to work with you. I have years of experience and
> many happy customers. Please call me at 570-236-7881. Again,
> that's 570-236-7881. Thank you.

82. The second pre-recorded message is referred to in this Complaint as the "the

Kelly Houston message."

83. In December 2018, Defendant, through its agents at the Peter Hewitt Team,

placed unwanted solicitation calls to Havassy's cell phone numbers in the form of pre-recorded

voicemails on the following dates and times:

### Calls to Plaintiff's Number Ending in 6744

| Date | Time | Message |
|------|------|---------|
| 12/11/2018 | 2:15 pm EST | Peter Hewitt Message |
| 12/11/2018 | 2:22 pm EST | Kelly Houston Message |
| 12/11/2018 | 3:06 pm EST | Peter Hewitt Message |
| 12/11/2018 | 5:07 pm EST | Peter Hewitt Message |
| 12/11/2018 | 8:02 pm EST | Kelly Houston Message |
| 12/11/2018 | 8:33 pm EST | Kelly Houston Message |
| 12/12/2018 | 12:04 pm EST | Peter Hewitt Message |
| 12/12/2018 | 2:05 pm EST | Kelly Houston Message |
| 12/12/2018 | 4:04 pm EST | Peter Hewitt Message |

SECOND AMENDED CLASS-ACTION COMPLAINT

| 12/18/2018 | 2:57pm EST | Peter Hewitt Message |
| 12/18/2018 | 6:03 pm EST | Peter Hewitt Message |
| 12/18/2018 | 8:32 pm EST | Kelly Houston Message |

**Calls to Plaintiff's Number Ending in 5991**

| Date | Time | Message |
| --- | --- | --- |
| 12/11/2018 | 2:17 pm EST | Peter Hewitt Message |
| 12/11/2018 | 2:22 pm EST | Kelly Houston Message |
| 12/11/2018 | 3:06 pm EST | Peter Hewitt Message |
| 12/11/2018 | 5:04 pm EST | Peter Hewitt Message |
| 12/11/2018 | 8:02 pm EST | Kelly Houston Message |
| 12/11/2018 | 8:32 pm EST | Kelly Houston Message |
| 12/12/2018 | 12:04 pm EST | Peter Hewitt Message |
| 12/12/2018 | 2:05 pm EST | Kelly Houston Message |
| 12/12/2018 | 4:04 pm EST | Peter Hewitt Message |
| 12/18/2018 | 2:22 pm EST | Peter Hewitt Message |
| 12/18/2018 | 6:03 pm EST | Peter Hewitt Message |
| 12/18/2018 | 8:32 pm EST | Kelly Houston Message |

84.    Defendants' calls were made for solicitation purposes, namely, to attempt to get Havassy to sell his home with Defendants.

85.    On information and belief, these prerecorded voice calls were sent to hundreds, if not thousands, of putative class members.

86.    The acts and omissions described above were in violation of the TCPA.

87.    Defendants' violations of the TCPA were knowing and willful.

**Direct and Vicarious Liability**

88.    On May 9, 2013, the FCC issued a Declaratory Ruling that held that businesses that profit from telemarketing may not avoid liability by outsourcing telemarketing to ostensibly independently owned third-parties:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

89.     Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

90.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*., at 6593.

91.     Defendant Keller Williams hired, encouraged, permitted, and enjoyed the benefits of mass robocalling by agents such as Peter Hewitt and Kelly Houston.

92.     Specifically, Keller Williams' data and lead generation service LandVoice was programmed to encourage calling homeowners looking to sell their homes, regardless of whether they consented to receive such calls or registered on the Do Not Call registry.

SECOND AMENDED CLASS-ACTION COMPLAINT

93.     Keller Williams encourages agents to follow "the model" outlined by Gary Keller, which recommends *inter alia* making as many phone calls as possible.

94.     On information and belief, Defendants sought a financial benefit from the prerecorded voicemails it placed to the putative class members as it attempted to derive business from these calls.

95.     Keller Williams, Peter Hewitt and Kelly Houston placed the telemarketing calls at issue.

96.     Keller Williams derives profit from and exercises control over its realtors- Peter Hewitt and Kelly Houston.

97.     Furthermore, the pre-recorded messages left on Plaintiff's voicemail, consistent with Defendant's policies and guidelines, identified Keller Williams as the organization on whose behalf Mr. Hewitt and Ms. Houston acted.

98.     Accordingly, Mr. Hewitt and Ms. Houston had actual and/or apparent authority to act on behalf of Keller Williams.

99.     Defendant Keller Williams acted as a principal to Hewitt and Houston, who acted as Keller Williams' agents.

100.    Defendant Keller Williams is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from Hewitt and Houston's unlawful calls.

101.    For the counts identified below, Defendant KWRI is vicariously liable as it encouraged and benefitted from Hewitt and Houston's violative conduct.

102.    For the counts identified below, Hewitt and Houston are directly liable for the unlawful calls at issue as they directly placed the underlying calls.

SECOND AMENDED CLASS-ACTION COMPLAINT

**The Claims at Issue Are Not Released by the Reglus Release**

103.    Defendant KWRI has previously filed motions to dismiss arguing alleged violations in the calls at issue could have been released by Havassy's settlement with Reglus.

104.    For the reasons set forth below, that is not the case.

105.    The Reglus Release provides in relevant part:

> The undersigned, James Havassy, individually, and on behalf of his heirs, executors, administrators, successors, assigns, subrogees and anyone claiming by or through them (hereinafter collectively referred to as "Releasors"), for and in consideration of the payment of Six Hundred and Seventy Nine Dollars and Seventy Five Cents ($679.75), (this represents $1.00 of damages and $678.75 representing all attorneys' fees, expenses, and cost due), the sufficiency of which is hereby acknowledged, does hereby release, acquit and forever discharge Reginald Reglus, together with their current and former insurers, heirs, executors, partners, shareholders, officers, directors, employees, predecessors, successors, affiliates, subsidiaries, parent companies, assigns, attorneys, servants, and agents (hereinafter collectively referred to as "Releasees"), of and from any and all liability, claims, demands, actions, causes of action and suits at law or in equity alleged in, could have been alleged in, or arising out of the action filed in Northampton County Magisterial District Court 03-1-04, Docket No. CV-240-2018 (referred to as "the occurrence").

(Ex. B, p. 1, ¶ 1.)

106.    None of the Defendants (KWRI, Peter Hewitt or Kelly Houston) are insurers, heirs, executors, partners, shareholders, officers directors, employees, predecessors, successors, affiliates, subsidiaries, parent companies, assigns, attorneys, servants or agents of Reginald Reglus.

SECOND AMENDED CLASS-ACTION COMPLAINT

107.    Furthermore, Pennsylvania Rules of Civil Procedure Governing Actions and Proceedings Before Magisterial District Judges Rule 210 provides as follows:

Rule 210: Practices Prohibited.[3]

The following practices are specifically prohibited:

(1)  The use of depositions or interrogatories for discovery or use at a hearing.

**(2)  Adding parties after the complaint is filed.**

(3)  Attachment proceedings previous to judgment.

(4)  Entry of a judgment by warrant of attorney or by confession of judgment.

108.    Havassy filed the Complaint in the Reglus Litigation on November 9, 2018.

109.    The offending calls from Hewitt and Houston identified in this class-action suit occurred in December 2018 - after the Reglus complaint was filed.

110.    The Defendants could not have been named and offending calls underlying this matter could not have been alleged the Reglus Litigation; as adding parties is not permitted after a complaint is filed in magisterial court.

111.    Accordingly, even with the broadest interpretation one could reasonably apply, the Defendants and claims set forth in this class-action lawsuit were not released in the Reglus litigation.

## CLASS ALLEGATIONS

112.    Plaintiff brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

---

[3] The Official Note for this Rule reads: "In keeping with the policy of making the procedures in actions before magisterial district judges as simple and nontechnical as possible and in view of the time limitations imposed elsewhere in these rules, it was thought desirable to prohibit specifically the practices mentioned in the four subdivisions of this rule." *See* Pa.R.Civ.P.M.D.J Rule 210 (official note).

SECOND AMENDED CLASS-ACTION COMPLAINT

113.    Havassy seeks to represent the following classes:

**Pre-recorded Voice Call Class:** All persons to whom Defendant (or its agents) placed calls on their cell phones which contained a pre-recorded voice identifying Peter Hewitt or Kelly Houston of Keller Williams from four years before the filing of the initial Complaint through the date a class is certified.

**Do-Not-Call List Class:** All persons who from four years before the filing of the initial Complaint to the date a class is certified: (1) received two or more pre-recorded voice calls soliciting real estate services in which the calls identify the Peter Hewitt or Kelly Houston of Keller Williams; (2) said calls were received by a number associated with a residential line or cell phone that was registered on the Do Not Call registry for over 30 days at the time of the calls; and, (3) said class member did not provide prior express written consent to be contacted by Defendant and did not have an established business relationship with Defendant.

114.    Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

115.    The putative class members' identities are readily ascertainable from Defendant's records or records within Defendants' control.

116.    Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

117.    Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

118.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

119.    Class Members are so numerous and that their individual joinder of all class

members is impracticable. There are no likely difficulties to be encountered in managing this

case as a class action.

120.    Common questions of law and fact exist to all Class Members and predominate

over questions affecting only individual Class members. Common legal and factual questions

include, but are not limited to the following:

    a.    Whether Defendants, or someone operating on their behalf, placed prerecorded voice calls to the cell phones of Plaintiff and the putative class members without obtaining the recipients' prior express written consent;

    b.    Whether Defendants placed prerecorded voice calls to the cell phones of Plaintiff and the putative class members;

    c.    Whether Defendants placed calls to Plaintiff and the putative class members after they were registered on the National Do Not Call Registry more than 31 days;

    d.    Whether Defendants' conduct violates 47 U.S.C. § 227(b);

    e.    Whether Defendants' conduct violates 47 U.S.C. § 227(c);

    f.    Whether Defendants' conduct violates the rules and regulations implementing the TCPA; and,

    g.    Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

121.    Plaintiff and the putative class members have claims arising out of Defendants'

uniform course of conduct, namely improperly placing prerecorded voice calls to the Plaintiff

and the putative class members.

122.    Plaintiff will fairly and adequately protect the interests of the class members

insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is

committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in

handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

123.   The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgements. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

124.   The Class representative was at all times relevant hereto a resident of Lehigh County.  Upon information and belief, KWRI through Peter Hewitt and Kelly Houston solicits real estate throughout the Lehigh Valley, Southeastern Pennsylvania and New Jersey.  Many class members reside in or near Lehigh County.  Accordingly, this is an appropriate forum in which to adjudicate this dispute.

125.   Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23.  Such modified definitions may be more expansive to include consumers excluded from the foregoing

definitions.

## COUNT I
## VIOLATTIONS OF §227(b) *et seq.* OF
## THE TELEPHONE CONSUMER PROTECTION ACT

126.    Plaintiff incorporates the previous paragraphs as if fully stated in this Count.

127.    The TCPA prohibits placing calls using an artificial or prerecorded voice to a cellular telephone except where the caller has the prior express written consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200.

128.    Defendants initiated multiple calls to Plaintiff which used a pre-recorded voice.

129.    Defendants' calls to Plaintiff and the putative Class Members were not made for emergency purposes.

130.    On information and belief, Defendants did not have prior express written consent to contact Plaintiff or the putative Class Members.

131.    The violations by Defendants were done willfully and intentionally.

132.    As a result of the above violations of the TCPA, Plaintiff and the putative class members are entitled to all damages available to them under Section 227(b) of the TCPA.

## COUNT II
## VIOLATIONS OF §227(c) *et seq.* OF
## THE TELEPHONE CONSUMER PROTECTION ACT

133.    Plaintiff incorporates the previous paragraphs as if fully stated in this Count.

134.    The TCPA prohibits any person or entity from initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200 *et seq.*

135.    Defendants made solicitation calls to Plaintiff and other class members on two or more occasions within 12 months where their numbers had been listed on the Do Not Call registry for greater than 31 days.

136.    The violations by Defendants were done willfully and intentionally.

137.    As a result of the above violations of the TCPA, Plaintiff and the putative class members are entitled to all damages available to them under Section 227(c) of the TCPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff James Havassy, individually, and on behalf of the putative class members, requests that the Court grant the following relief against Defendants Keller Williams Realty, Inc., Peter Hewitt and Kelly Houston:

1) Enter an order against Defendants pursuant to Rule 23 of the Rules of Civil Procedure, certifying this action as a class action and appointing Plaintiff as the class representative;

2) Enter an order appointing Kimmel & Silverman and Butsch Roberts & Associates LLC as class counsel;

3) Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation (of both 227(b) and 227(c)), or up to $1,500 per violation of each sub-section if Defendant willfully violated the TCPA;

4) Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from calling numbers registered on the National Do Not Call Registry;

5) Award Plaintiff and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and,

6) Award Plaintiff and the class such further and other relief, including but not limited to any applicable pre-judgment and/or post-judgment interest, and any other relief the Court deems just and appropriate.

//

SECOND AMENDED CLASS-ACTION COMPLAINT

## JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.


Respectfully submitted,

Dated:  September 8, 2023          Kimmel & Silverman, P.C.

By: */s/  Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (PA ID. No. 311908)
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Butsch Roberts & Associates LLC

*/s/ Christopher E. Roberts*
Christopher E. Roberts (admitted *pro hac vice*)
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: 314-863-5700
Fax: 314-863-5711
croberts@butschroberts.com
*Attorneys for Plaintiff, James Havassy, and all others similarly situated*


## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg, Esq. hereby certify the foregoing was served on all parties of record via ECF on September 8, 2023.

*/s/ Jacob U. Ginsburg*